IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EUGENE J. MANNING, et al.,

*Plaintiffs,*

v.                                                                            Civil Action No.: 11-cv-2964

LOUIS F. MERCATANTI, JR.,

*Defendant.*

**MEMORANDUM OPINION**

Eugene J. Manning and J. Frederick Manning (the "Mannings") brought suit against
Louis F. Mercatanti, Jr., complaining that Mercatanti failed to pay them sums due pursuant to a
guaranty that he executed on April 13, 2005 (the "Guaranty"), as "security for the repayment" of
obligations due to plaintiffs under employment agreements that they concurrently executed with
Nassau Broadcasting I, LLC and Nassau Braodcasting Partners, LP.  *See* Complaint (ECF 1).[1]
Copies of the Guaranty, as well as each employment agreement, are appended to the Complaint
as plaintiffs' Exhibits A, B, and D, respectively.  Plaintiffs seek to recover $1,472,000 under the
Guaranty, plus interest and attorneys' fees.  *Id.*

Mercatanti has moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6)
("MTD," ECF 16).  The Mannings have filed an opposition ("Opposition to MTD," ECF 21), as
well as their own motion for summary judgment ("MSJ," ECF 20).  The motions have been fully
briefed, and no hearing is necessary to resolve them.[2]  *See* Local Rule 105.6.

_____

[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because there is
complete diversity of citizenship and the amount in controversy exceeds $75,000.

[2] In resolving the motions, I have also considered the Mannings' memorandum in support
of their summary judgment motion ("MSJ Memo," ECF 20-1); Mercatanti's memorandum in
support of his motion ("MTD Memo," ECF 17); his reply to plaintiffs' opposition ("MTD

## Factual Background[3]

On December 17, 2004, pursuant to an Asset Purchase Agreement, Manning Broadcasting, Inc. agreed to sell and/or assign to Nassau Broadcasting I, LLC and Nassau Broadcasting III, LLC, "the assets and property used in the operation of two radio stations" in Hagerstown, Maryland.  *See* Guaranty at 1.[4]  Thereafter, on April 13, 2005, the Mannings each entered into identical employment agreements (the "Employment Agreements") with Nassau Broadcasting I, LLC and its parent, Nassau Broadcasting Partners, L.P. (collectively, "Nassau").

The Employment Agreements provide for the Mannings' employment for ten years, commencing in 2005, upon the closing for the transfer of the radio stations.  *Id.* ¶ 1.  Paragraph 5 of the Employment Agreements, titled  "Termination," states:  "This contract shall terminate at the Termination Date, unless earlier terminated by written agreement of [Nassau] or [the Mannings]."

Under the Employment Agreements, the Mannings are obligated to provide "advisory services" with respect to both radio stations, although they are not "required to devote any minimum number of hours," nor are they required to be "physically located at any office of [Nassau] or at the [radio s]tations."  *Id.* ¶ 2.  In exchange for these services, the Mannings are to receive two million dollars each, payable over ten years, ending in July 2015.  Complaint ¶¶ 7, 9.

---

Reply," ECF 25); his Opposition to plaintiffs' summary judgment motion ("Opposition to MSJ," ECF 24); and the Mannings' reply ("MSJ Reply," ECF 27).

[3] In resolving a motion to dismiss, the Court assumes the truth of the well pleaded facts in the complaint.  *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).  In regard to a motion for summary judgment, the facts are construed in favor of the party who opposes summary judgment.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *accord Scott v. Harris*, 550 U.S. 372, 380 (2007).  Here, the facts are not in dispute.

[4] In a related case, *Manning Broadcasting, Inc. v. Mercatanti*, ELH-12-0195, Manning Broadcasting has sued defendant under a separate guaranty to recover, *inter alia*, monies due and owing under a Promissory Note executed in favor of Manning Broadcasting in payment for the radio stations.

And, under Paragraph 3 of the Employment Agreements, their compensation is due "regardless of whether [the Mannings have] resigned" or been "fired, with or without cause."

Initially, plaintiffs were to be paid in sixteen increments of $50,000 every three months, followed by a lump sum installment of $1,080,000, and then twenty-four incremental payments of $5,000 every three months.  *Id.*; *see also id.* at Attachment 1.  However, by amendments to the Employment Agreements on August 27, 2009 (the "Amendments"),  Complaint ¶¶ 8, 10, the compensation schedule was modified; beginning on May 15, 2009, the Mannings were to receive monthly payments of $16,000 for the remainder of the ten year term.  *See* plaintiffs' Exh. C, E ¶ 1; *see also id.* at Attachment A.  The Amendments are appended to the Complaint as plaintiffs' Exhibits C and E.

Nassau did not pay the Mannings the $16,000 payments due on October 15, 2011.  Complaint ¶ 15.  The Employment Agreements state that, if Nassau "fails to render payment of any amount due hereunder when said payment is due and payable," it "constitute[s] an event of default."  *See* plaintiffs' Exhibits B and D, ¶ 14.  And, the Amendments provide that, in the event of default, the balance due under the Employment Agreements "shall immediately and automatically become due and payable in full…."  *See* plaintiffs' Exhibits C and E, ¶ 2(b)(v).

Plaintiffs contend that Nassau is in default because it "ha[s] not paid the Mannings the remaining sums due under the Employment Agreements."  Complaint ¶  18.  They assert that, as of October 15, 2011, each plaintiff was owed $736,000 under the Employment Agreements.  *See* plaintiff's Exh. C and  E at Attachment A.

As noted, Mercatanti executed the Guaranty on April 13, 2005, "concurrently with the Employment Agreements as security for the repayment of Nassau's obligations under the Employment Agreements."  Complaint ¶¶ 4, 11.  The Guaranty identifies Mercatanti, who "holds

all of the ownership interests in Nassau," as Guarantor, and the Mannings as beneficiaries.  *Id.* By its terms, it "guarantees to [the Mannings] the full and prompt payment" of Nassau's obligations under the Employment Agreements.  *Id.*

It is undisputed that "Mercatanti has not paid the Mannings any amounts under the Guaranty."  *Id.* ¶ 19.  As a result, the Mannings allege breach of contract as their sole claim in the Complaint.  They assert:  "Mercatanti's failure to pay the Mannings in full all sums due under the Guaranty, including the amounts due (as accelerated) under the Employment Agreements and the amounts representing the Mannings' costs and expenses, constitutes a breach of the Guaranty…."  *Id.* ¶ 22.  The Mannings each seek $736,000, for a total of $1,472,000, "together with all interest and other charges due under the Employment Agreements through the date of full satisfaction of the judgment, pursuant to the terms of the Guaranty," including "costs and expenses, including reasonable attorneys' fees and expenses."  *Id.* at 5.

Additional facts are included in the Discussion.

## I.  Defendant's Motion To Dismiss

*Standard of Review*

Defendant has moved to dismiss the case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *E.I. du Pont de Nemours & Co., supra,* 637 F.3d at 440 (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007), and *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).  Of import here, the court may properly consider documents "attached or incorporated into the complaint," as well as documents attached to the

motion, "so long as they are integral to the complaint and authentic." *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also E.I. du Pont de Nemours & Co.*, 637 F.3d at 448.[5]

A defendant may test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6). Both *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), make clear that, in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'...") (citation omitted); *see Simmons v. United Mortgage and Loan Inv.*, 634 F.3d 754, 768 (4th Cir. 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citation omitted).

In resolving a Rule 12(b)(6) motion, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S. Ct. 1740 (2010). Moreover, a motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted).

*Contentions*

---

[5] Accordingly, I have considered the five exhibits appended to the Complaint: the Guaranty, the Employment Agreements, and the Amendments.

In his motion to dismiss, Mercatanti insists that "the guaranteed promises contained in the underlying employment agreements contain options of non-performance on the part of the Plaintiffs, which render the Plaintiffs' obligations illusory and unenforceable."   MTD at 1. Indeed, defendant maintains that plaintiffs "promise[d] nothing."   MTD Memo at 6.   Claiming that the Employment Agreements were not supported by consideration, defendant insists that both the Employment Agreements and the Guaranty are "unenforceable."   *Id*. at 4.

In support of his position that plaintiffs' obligations were illusory Mercatanti maintains that "[t]here are no allegations in the Complaint concerning any services that the Plaintiffs actually provided for Nassau in exchange for compensation."   *Id.* at 3.   He also focuses on what he terms plaintiffs' "right to resign, without cause, the instant [the Employment Agreements] were signed…."   *Id.* at 5.   Mercatanti relies on the interplay of three provisions in the Employment Agreements to establish his claim that the contract is illusory, because the Mannings enjoyed the immediate right to resign, without consequence.   Paragraph 2 of the Employment Agreements, titled "Employment," requires the Mannings to "provide [Nassau] advisory services with respect to the [radio] stations."   However, the provision also states that plaintiffs "shall devote such business time as [they] deem[] reasonably necessary to provide such services, but shall not be required to devote any minimum number of hours."   *Id.*   Paragraph 3, captioned "Compensation," stipulates that the agreed upon compensation "shall be due and payable" to the Mannings "regardless of whether [they have] resigned or been fired, with or without cause."   And, Paragraph 4, titled "Benefits," states that the Mannings shall be provided with "health insurance and benefits at least equal to their current coverage, at no cost…until the end of the Employment Term…, regardless of whether [they have] resigned or been fired, with or without cause."

In Mercatanti's view, "the Employment Agreements, on their face, do not represent legally enforceable contracts in that they gave Plaintiffs a right to resign, without cause, the instant they were signed, without relieving Nassau or Mercatanti of their payment obligations…." MTD Memo at 5. Claiming that the Employment Agreements are not binding or enforceable, defendant posits: "Because of the simple fact that the Plaintiffs promised nothing to Nassau or to Mercatanti under the Employment Agreements, Plaintiffs' promises were illusory, and the Employment Agreements were void *ab initio*." *Id.* at 7.

The Mannings counter that "the Employment Agreements are enforceable because they are supported by…promises that independently, and collectively, provide adequate consideration." Opposition to MTD at 4. In particular, they note, *id.*, that, under ¶ 2 of Employment Agreements, they are obligated, for ten years, to "'provide…advisory services with respect to the [radio s]tations'"; they are barred from "engag[ing] in other activities or businesses if they 'directly and materially interfere with [their] performance of [their] duties' under the Employment Agreements," Opposition to MTD at 5 (quoting ¶ 2 of Employment Agreements); and they are obligated to "maintain in 'strict confidence at all times and to not disclose to any third party any sales, technical, financial, programming or other date or practices of [Nassau],'" and this obligation "shall 'survive expiration of termination of [the Employment Agreements].'" Opposition to MTD at 5 (quoting ¶ 6 of Employment Agreements). Plaintiffs add that this "confidentiality obligation was particularly important since the Mannings had operated the radio stations for over 20 years." Opposition to MTD at 5. Further, they argue that "the Employment Agreements have as additional consideration the sale and purchase of the radio stations…." *Id.* And, citing ¶ 5 of the Employment Agreements, they observe: "Instead of the Mannings having

the unilateral right to resign, the Employment Agreements provide that *the parties* may agree to terminate the Employment Agreements."  Opposition to MTD at 5-6 (emphasis added).

Alternatively, the Mannings argue that, even if the Employment Agreements were not enforceable, "Mercatanti specifically waived defenses relating to the enforceability of the Employment Agreements."  Opposition to MTD at 2.  They rely on Section 5 of the Guaranty, captioned "Guaranty Unconditional," which states (emphasis added):

> The Guarantor[, *i.e.,* Mercatanti,] acknowledges and agrees that no change in the nature or terms of the Guaranteed Obligations, or other agreements, instruments or contracts evidencing, related to or attendant with the Guaranteed Obligations (including any novation), *nor any determination of lack of enforceability thereof*, shall discharge all or any part of the liabilities and obligations of the Guarantor pursuant to this Guaranty; *it being the purpose and intent of the Guarantor and Employees[, i.e., the Mannings,] that the covenants, agreements and all liabilities and obligations of the Guarantor hereunder are absolute, unconditional and irrevocable under any and all circumstances*. Without limiting the generality of the foregoing, the Guarantor agrees that until each and every one of the covenants and agreements of this Guaranty is fully performed, the Guarantor's undertakings hereunder shall not be released, in whole or in part, by any action or thing which might, but for this section of this Guaranty, be deemed a legal or equitable discharge of a surety or guarantor, or by reason of any waiver, omission of Employees, or its failure to proceed promptly or otherwise, or by reason of any action taken or omitted by Employees whether or not such action or failure to act varies or increases the risk of, or affects the rights or remedies of, the Guarantor or by reason of any further dealings between Nassau on the one hand and Employees on the other hand, or any other guarantor or surety, and *the Guarantor, to the extent permitted by applicable law, hereby expressly waives and surrenders any defense to its liability hereunder*, or any right of counterclaim or offset of any nature or description which it may have or which may exist based upon, and shall be deemed to have consented to, any of the foregoing acts, omissions, things, agreements or waivers.

In reply, Mercatanti argues that the Mannings' commitment to provide advisory services and promises of non-competition and confidentiality were illusory because the Mannings could have resigned at any time, prior to gaining any confidential knowledge, before providing any advisory services, and without being restricted from engaging in any competitive opportunities. *See* MTD Reply at 4.  He asserts: "Plaintiffs did not take on any binding obligations because they

had, from the outset, the option of terminating their 'promise(s)' the instant they signed the Employment Agreements, while Nassau did not have a commensurate right to terminate its obligations to compensate the Plaintiffs."  MTD Reply at 3.  Mercatanti adds, *id.* at 4:

> The resignation option provided Plaintiffs the ability to absolve themselves of (1) any obligation to perform requested "advisory services," (2) any restriction on employment (there could be no material interference in Plaintiffs' employment duties if they resigned); and (3) any obligation to maintain [Nassau's] information in strict confidence, because resignation would prevent the Plaintiffs from recovering any confidential information in the first instance.

Defendant also rejects the view that the sale and purchase of the radio stations served as consideration for the Employment Agreements.  He argues: "The sale and purchase of radio stations were addressed in separate, fully integrated agreements that are separate and apart from the Employment Agreements at issue here."  *Id*.

With respect to the matter of waiver of defenses, defendant counters: "Mercatanti did not, and indeed could not, waive all defenses respecting the Employment Agreements."  *Id.* at 5.  In his view, Section 5 of the Guaranty, quoted above,

> explains that if the Guaranteed Obligations are found to be unenforceable, the Guarantor is not discharged of all of his "liabilities and obligations…*pursuant to this Guaranty*."  This does not mean the Defendant has to pay sums due under the unenforceable Employment Agreements even if those sums are not actually due, it merely means that the Guaranty is not discharged as a result of the unenforceability of the Employment Agreements.

MTD Reply at 6 (emphasis in original).

Put another way, defendant contends that "[t]he waiver language at issue applies to defenses available under the Guaranty itself," but does not waive "defenses that could have been asserted by Nassau under the Employment Agreements…."  *Id*.  Moreover, Mercatanti insists: "Maryland law does not permit a waiver of all defenses."  *Id.* at 8.

Discussion[6]

*a. Enforceability*

Ordinarily, a contract is not enforceable unless it is supported by consideration. *Harford Cnty. v. Town of Bel Air*, 348 Md. 363, 381, 704 A.2d 421, 430 (1998). "In Maryland, consideration may be established by showing 'a benefit to the promisor or a detriment to the promisee.'" *Cnty. Comm'rs for Carroll Cnty. v. Forty W. Builders, Inc.*, 178 Md. App. 328, 384-85, 941 A.2d 1181, 1213 (citations and some internal quotation marks omitted), *cert. denied*, 405 Md. 63, 949 A.2d 652 (2008). The Maryland Court of Appeals has said: "A promise becomes consideration for another promise only when it constitutes a binding obligation. Without a binding obligation, sufficient consideration does not exist to support a legally enforceable agreement." *Cheek v. United Healthcare of Mid-Atl., Inc.*, 378 Md. 139, 148, 835 A.2d 656, 661 (2003).

An illusory promise cannot constitute valid consideration. *See* 2 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 5.28 (2003) (stating that "an illusory promise is neither enforceable against the one making it, nor is it operative as consideration for a return promise," and that "if there is no other consideration for a return promise, the result is that no contract is created."); RESTATEMENT OF CONTRACTS 2d § 77 cmt. a (1981) ("Where the apparent assurance of performance is illusory, it is not consideration for a return promise."). In *Cheek*, the Maryland Court of Appeals explained that "[a]n 'illusory promise' appears to be a promise, but it does not actually bind or obligate the promisor to anything," because performance is "'entirely optional.'" *Cheek*, 378 Md. at 148-49, 835 A.2d at 662 (2003) (quoting RESTATEMENT OF CONTRACTS 2d §

---

[6] The Employment Agreements and the Guaranty contain choice of law provisions that stipulate to the application of Maryland law. *See* plaintiffs' Exh. A ¶ 16; plaintiffs' Exh. B, D ¶ 13. Moreover, the parties' submissions presuppose the application of Maryland law.

2 cmt. e.).  When the promisor "'retains an unlimited right to decide later the nature or extent of his performance,'" this "'unlimited choice in effect destroys the promise and makes it merely illusory.'"  *Cheek,* 378 Md. at 149, 835 A.2d at 662 (quoting 1 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 4:24 (4TH ED. 1990) ("WILLISTON ON CONTRACTS")).

As noted, ¶ 2 of the Employment Agreements provides: "Employee shall devote such business time as Employee deems reasonably necessary to provide [advisory] services but shall not be required to devote any minimum number of hours."  Despite Mercatanti's claim, this language does not give the Mannings the "unilateral right to perform zero hours of work for Nassau," so as to render the Mannings' promises illusory and the Employment Agreements unenforceable.  MTD Memo at 7.  Rather, it is typical of "open terms" contracts, by which the parties are bound despite the presence of "non-specific contractual standards."  *First Union Nat. Bank v. Steele Software Sys. Corp.*, 154 Md. App. 97, 174, 838 A.2d 404, 449 (2003) (holding a "best efforts" clause enforceable despite its lack of specificity), *cert. denied*, 380 Md. 619, 846 A.2d 402 (2004); *accord Baron Fin. Corp. v. Natanzon*, 509 F. Supp. 2d 501, 513 (D. Md. 2007) ("contractual 'best efforts' terms are enforceable under Maryland law, even when parties to a contract have chosen not to define those terms or expressly provide a standard by which to measure a promisor's performance").

"'[O]pen term' performance contracts are premised upon a mutually enforceable agreement that the non-specific standard selected by the parties will be interpreted and applied by a fact-finder 'after the fact,' based on all the circumstances surrounding the parties' course of dealing."  *8621 Ltd. P'ship v. LDG, Inc.*, 169 Md. App. 214, 229-30, 900 A.2d 259, 268 (citation omitted), *cert. denied*, 394 Md. 480, 906 A.2d 943 (2006); *see also* Mark P. Gergen, *The Use of*

*Open Terms in Contract*, 92 COLUM. L. REV. 997, 1000 (1992) ("Gergen") (stating that contracts using open terms usually require performance "under a negligence-like term" such as reasonableness).   Of import here, open contract terms do "not preclude formation of an enforceable contract if that is what the parties intended." *First Union Nat. Bank*, 154 Md. App. at 173, 838 A.2d at 449.   *See 8621 Ltd. P'ship, supra*, 169 Md. App. at 228, 900 A.2d at 267 ("Lack of specific terms...does not necessarily make a...clause in a contract meaningless.").

It is also noteworthy that Maryland law generally implies a covenant "to act in good faith and deal fairly with the other party or parties to a contract." *Questar Builders, Inc. v. CB Flooring, LLC*, 410 Md. 241, 273, 978 A.2d 651, 670 (2009).   This principle "governs the manner in which a party may exercise the discretion accorded to it by the terms of the agreement." *Id*.   In performing, the "party with discretion is limited to exercising that discretion in good faith and in accordance with fair dealing." *Id*.   Accordingly, there is no merit to Mercatanti's assertion that the language of the Employment Agreements allows the Mannings to work "zero hours" and still receive compensation.   MTD Memo at 7.

Even assuming the advisory services clause does not amount to valid consideration, the "non-compete" and "confidentiality" clauses of the Employment Agreements constitute valid consideration.   As noted, the Employment Agreements require the Mannings to refrain from engaging in other activities or businesses that may "directly and materially interfere with [their] performance of [their] duties" under the Employment Agreements, and "to keep in strict confidence at all times and to not disclose to any third party any sales, technical, financial, programming or other data practices of [Nassau]," an obligation that "shall survive expiration or termination of [the Employment Agreements]."   Plaintiffs' Exhibits B and D, ¶¶ 2, 6.

12

Any "benefit to the promisor or…detriment to the promisee is sufficient valuable consideration to support a contract." *Vogelhut v. Kandel*, 308 Md. 183, 191, 517 A.2d 1092, 1096 (1986) (citation omitted). *Accord Cheek*, 378 Md. at 148, 835 A.2d at 662. "Legal detriment means 'giving up something which immediately prior thereto the promisee was privileged to retain, or doing or refraining from doing something which he was then privileged not to do, or not to refrain from doing.'" *Vogelhut*, 308 Md. at 191, 517 A.2d at 1096 (citation omitted). In *Ecology Services, Inc. v. Clym Environmental Services, LLC*, 181 Md. App. 1, 14-15, 952 A.2d 999, 1007, *cert. denied*, 406 Md. 444, 952 A.2d 999 (2008), the Maryland Court of Special Appeals explained: "The general rule in Maryland is that if a restrictive covenant in an employment contract is supported by adequate consideration and is ancillary to the employment contract, an employee's agreement not to compete with his employer upon leaving the employment will be upheld…." (Citation omitted). Therefore, a promise to refrain from engaging in competition or disclosing confidential information is a legal detriment to the promisee sufficient to serve as consideration undergirding an enforceable contract. It follows that the Employment Agreements were supported by valid consideration.

The determination as to consideration is not undercut even if the Mannings had "a right to resign, without cause, the instant [the Employment Agreements] were signed…." MTD Memo at 5. It is true that, under the terms of the Employment Agreements, Nassau is not relieved of its obligation to pay the Mannings in the event of termination of the Employment Agreements.[7] But, "'an unlimited option to cancel does not invalidate a contract where it

---

[7] The Employment Agreements do not necessarily provide the Mannings with a unilateral right to terminate. Paragraph 5 states that the agreements shall end on the termination date, ten years after the transfer of the radio stations, "unless earlier terminated by written *agreement* of [Nassau] *or* [the Mannings]." (Emphasis added). The term "agreement" implies the consent of both parties to termination, while "or" implies that either party can unilaterally terminate.

[otherwise] can be shown that it does not wholly defeat consideration.'" *Questar Builders*, 410 Md. at 277-78, 978 A.2d at 673   (citation omitted) (alteration in *Questar Builders*).   As the Maryland Court of Appeals has explained, "'such a power to terminate does not invalidate the contract..., so long as the party reserving the power to terminate is irrevocably bound for any appreciable time or has materially changed any of his relations *or otherwise rendered some performance capable of operating as a consideration*.'"   *Id.* (citation omitted) (alterations in *Questar Builders*) (emphasis added).

Mercatanti correctly asserts that the plaintiffs have not set forth "allegations in the Complaint concerning any services that the plaintiffs actually provided for Nassau."   MTD Memo at 3.   However, this omission does not establish the failure to state a claim for relief based on breach of contract; failure to perform is an affirmative defense.   Notably, the Employment Agreements and the Guaranty were executed in April 2005, and Nassau made the requisite payments until October 2011.   Thus, for more than six years Nassau provided compensation to the Mannings, apparently without protest.[8]   In construing the allegations of the Complaint, for purposes of the Rule 12(b)(6) analysis, plaintiffs are entitled to the inference that the sums due under the Employment Agreements were paid for six years because plaintiffs performed.

To be sure, Paragraph 8 of the Employment Agreements states: "Nothing herein shall be construed as obligating [Nassau] to use [the Mannings'] services."   But, what Nassau purchased was the right to use the Mannings' services, if it chose to do so.   Nor is there any indication in

---

Contract terms are ambiguous "when the language of the contract is susceptible of more than one meaning to a reasonably prudent person." *Auction & Estate Representatives, Inc. v. Ashton*, 354 Md. 333, 340, 731 A.2d 441, 444-45 (1999).   And, the construction of "ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim."   *Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992).

[8] Plainitffs have not asserted a claim that defendant's position is barred by laches or equitable estoppel.

the parties' submissions that the Mannings refused to perform in accordance with any requests made by Nassau. In addition, for more than six years, the Mannings have been subject to a contractual confidentiality obligation. And, it is undisputed that the confidentiality obligation continues, even upon resignation or termination.

Furthermore, as parties to a ten year, fixed term employment contract, the Mannings were subject to an implied covenant of good faith and fair dealing. *Hrehorovich v. Harbor Hosp. Ctr.*, 93 Md. App. 772, 796, 614 A.2d 1021, 1033, *cert. denied*, 330 Md. 319, 624 A.2d 490 (1992). "'[U]nder the covenant of good faith and fair dealing, a party [exercising discretion must] refrain from doing anything that will have the effect of frustrating the right of the other party to receive the fruits of the contract between them.'" *Questar Builders*, 410 Md. at 281, 978 A.2d at 675 (citation and some internal quotation marks omitted) (alteration in *Questar Builders*). "This means that each party must 'do nothing to destroy the rights of the other party to enjoy the fruits of the contract and [ ] do everything that the contract presupposes they will do to accomplish its purpose.'" *Id.* (citation omitted) (alteration in *Questar Builders*).

It is salient that the Mannings did not resign immediately, or at all. Immediate resignation might have violated the covenant of good faith and fair dealing, but that is not what occurred. *See* Corbin on Contracts § 1.17 ("The Complaint that a promise is illusory often comes in rather poor grace from the addressee of the allegedly illusory promise, particularly where the addressor is ready and willing to carry out the expression of intention. For this reason, courts are quite properly prone to examine the context to conclude that the escape hatch was intended to be taken only 'in good faith' or in the 'exercise of a reasonable discretion' or upon some other condition not wholly within the control of the promisor. In which case, the conclusion is that the promise is not illusory.").

For these reasons, I conclude that the Employment Agreements are not void *ab initio* as illusory contracts.[9]  It follows that defendant is not entitled to dismissal on this basis.

### b. Waiver

Even if the Employment Agreements are not legally enforceable because of a lack of consideration, under the Guaranty Mr. Mercatanti waived his right to dispute legal enforceability.

"Maryland adheres to the principle of the objective interpretation of contracts."  *Cochran v. Norkunas*, 398 Md. 1, 16, 919 A.2d 700, 709 (2007).  "Generally, when seeking to interpret the meaning of a contract our search is limited to the four corners of the agreement."  *Walton v. Mariner Health of Maryland, Inc.*, 391 Md. 643, 660, 894 A.2d 584, 594 (2006).  The Court considers "what a reasonable person in the same position would have understood as the meaning of the agreement."  *Id.  See also Hartford Acc. & Indem. Co. v. Scarlett Harbor Assoc. Ltd. P'ship*, 109 Md. App. 217, 291, 674 A.2d 106, 142 (1996) ("[T[he court must, as its first step, determine from the language of the agreement what a reasonable person in the position of the parties would have meant at the time the agreement was effectuated."), *aff'd*, 346 Md. 122, 695 A.2d 153 (1997).  "Where the language of a contract is clear, there is no room for construction; it must be presumed that the parties meant what they expressed."  *Id.*  Put another way, "'[i]f only one reasonable meaning can be ascribed to the [contract] when viewed in context, that meaning necessarily reflects the parties' intent.'"  *Young v. Anne Arundel Cnty.*, 146 Md. App. 526, 586, 807 A.2d 651, 687, *cert. denied,* 372 Md. 432, 813 A.2d 259 (2002) (citation omitted).

However, a contract is ambiguous "when the language of the contract is susceptible of more than one meaning to a reasonably prudent person."  *Auction & Estate Representatives, Inc.*

---

[9] This determination does not resolve any contention that plaintiffs breached the contract based on their performance.

*v. Ashton*, 354 Md. 333, 340, 731 A.2d 441, 444-45 (1999).  "[T]he determination of whether a contract is ambiguous, is a question of law…."  *Towson Univ. v. Conte*, 384 Md. 68, 78, 862 A.2d 948, 946 (2004).  And, the construction of "ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim."  *Martin Marietta Corp., supra,* 991 F.2d at 97.

With this framework, I turn to review again Paragraph 5 of the Guaranty.  It states, in part:

> The Guarantor[, *i.e.,* Mercatanti,] acknowledges and agrees that no change in the nature or terms of the Guaranteed Obligations, or other agreements, instruments or contracts evidencing, related to or attendant with the Guaranteed Obligations (including any novation), *nor any determination of lack of enforceability thereof*, shall discharge all or any part of the liabilities and obligations of the Guarantor pursuant to this Guaranty; it being the purpose and intent of the Guarantor and Employees[, *i.e.*, the Mannings,] that the covenants, agreements and all liabilities and obligations of the Guarantor hereunder are absolute, unconditional and irrevocable under any and all circumstances….[T]he Guarantor, to the extent permitted by applicable law, hereby *expressly waives and surrenders any defense to its liability hereunder….*

Plaintiffs' Exhibit A (emphasis added).

Mercatanti argues that "[t]here is no language in Section 5 of the Guaranty that would suggest that Defendant waived defenses that the underlying debtor [i.e., Nassau] could have asserted" with respect to the Employment Agreements.  MTD Reply at 7.  He asserts that the alleged waiver language does not obligate him "to pay sums due under the unenforceable Employment Agreements even if those sums are not actually due, it merely means that the Guaranty is not discharged as a result of the unenforceability of the Employment Agreements."  *Id.* at 6.  Put another way, Mercatanti argues that the waiver language "applies only to defenses to liability 'hereunder,' *i.e.*, under the Guaranty."  *Id.*  He adds that "the absence of specific language proving that Defendant waived defenses that could have been asserted by Nassau under

17

the Employment Agreements is fatal to Plaintiffs' claim [of] waiver." *Id.* "[W]ithout such a waiver," Mercatanti argues, "Maryland law expressly provides that 'a guarantor possesses all of the defenses available to the principal debtor.'" *Id.* at 7 (quoting *Bessette v. Weitz*, 148 Md. App. 215, 239, 811 A.2d 812, 825 (2002), *cert. denied,* 374 Md. 84, 821 A.2d 371 (2003)).

In addition, defendant contends that to view the waiver clause as urged by plaintiffs would be contrary to the public policy of Maryland.  He asserts that, when the primary obligation is not enforceable, such that the contract is void *ab initio*, Maryland law does not permit a waiver of defenses.  MTD Reply at 8.

"Waiver, in general, is 'the intentional relinquishment of a known right…and may result from an express agreement or be inferred from circumstances.'" *Myers v. Kayhoe*, 391 Md. 188, 205, 892 A.2d 520, 530 (2006) (some internal quotation marks omitted).  Even constitutional rights "may be relinquished by agreement, provided any such waiver is 'voluntary, knowingly, and intelligently made.'" *Maryland-National Capital Park & Planning Comm'n v. Washington Nat'l Arena*, 282 Md. 588, 613-14, 386 A.2d 1216, 1233 (1978) (citation omitted).  *Accord Walther v. Sovereign Bank*, 386 Md. 412, 872 A.2d 735 (2005).

To be sure, waivers may be suspect when there is a "'great disparity in bargaining power'" between the parties, or they are not represented by counsel.  *Atlantic Leasing & Fin., Inc. v. IPM Tech., Inc.*, 885 F.2d 188, 192 (4th Cir. 1989) (citation omitted).  In this case, however, there is no allegation that the waiver was made involuntarily or unknowingly.  Nor is there any apparent disparity of bargaining power.  Indeed, both parties were represented by counsel at the time the relevant documents were drafted and executed.

As noted, Mercatanti insists: "Maryland law does not permit a waiver of all defenses." MTD Reply at 8.  In support of this contention, he cites only one case, *McGinley v. Massey*, 71

Md. App. 352, 525 A.2d 1076 (1987).  The case is inapposite.  In that case, the Maryland Court of Special Appeals found a guaranty unenforceable because the principal contract "was illegal as violative of a statutory prohibition."  *Id.* at 358, 525 A.2d at 1079.  The *McGinley* Court did not address the issue of waiver.  And, there is no contention here that the Employment Agreements violate a statutory prohibition.

Moreover, clauses in guaranties that waive defenses regarding the principal contract have been upheld.  *Atlantic Leasing & Financial, Inc.*, *supra,* 885 F.2d 188, is instructive.  In that case, IPM Technology, Inc. ("IPM") served as guarantor for Workman Electronic Products ("Workman"), a previously wholly-owned subsidiary of IPM, with respect to a lease of computer equipment by Workman from Atlantic Leasing & Financial, Inc. ("Atlantic").  *Id.* at 190.  An "Equipment Lease Guaranty" contained a "waiver-of-defenses provision" which provided*, id.* at 190-91 (emphasis added), that IPM

> "waives any right to require Lessor to: (a) proceed against Lessee; (b) proceed against Lessee or the leased equipment or any other security held from Lessee; (c) pursue any other remedy in Lessor's power whatsoever; or (d) notify Guarantor of any default by Lessee in the payment of any rent or other sums reserved in the Lease or in the performance of any term, covenant or condition therein required to be kept, observed or performed by Lessee.  *Guarantor waives any* defense arising by reason of any disability or any counterclaim or right of set-off or *other defense of Lessee...; provided, however, that Guarantor does not waive any defense arising from the due performance by Lessee of the terms and conditions of the Lease*."

Workman stopped making lease payments after the computer equipment failed to function properly, or as promised.  *Id.* at 191.  In light of the default, Atlantic demanded payment from IPM.  *Id.*  A judgment was eventually entered against IPM pursuant to a confessed-judgment provision in the Equipment Lease Guaranty.  *Id.*  IPM moved to vacate the judgment on a number of grounds, including "that it was uninformed as to the consequences of the contract terms to which it had agreed…."  *Id.*

The District Court held that "defendant specifically waived any defense which it might have to an action on the guaranty…." *Id.* at 193.  Applying Maryland law, the Fourth Circuit "agree[d] that the bulk of IPM's purported defenses [we]re eclipsed by the waiver-of-defenses clause contained in the Guaranty." *Id.* at 194.  The Court concluded that "any purported defenses arising from the decision to procure [the] computer equipment or the alleged failure of such equipment (e.g., breach of warranty, breach of contract, misrepresentation, failure to disclose, etc.) may not be asserted as a matter of law," *id.*, although the Court stated that IPM was entitled to assert "a second class of alleged defenses that arguably relate to IPM's decision to enter the Guaranty (e.g., fraud[…], misrepresentation or failure to disclose other suits, etc.)." *Id.*

A waiver of a challenge to legal enforceability does not equate to a waiver of a claim of breach based on failure to perform.[10]  I note, however, that, unlike in this case, in *Atlantic Leasing & Financial, Inc.*, *supra*, the guaranty expressly provided that the guarantor did not waive any defense "arising from…due performance…." 885 F.2d at 191.

Mercatanti's position, i.e., that "[t]here is no language in Section 5 of the Guaranty that would suggest that Defendant waived defenses that the underlying debtor could have asserted" with respect to the Employment Agreements, directly contradicts the contractual language in Paragraph 5 of the Guaranty, which expressly states that no "determination of lack of enforceability" of the Employment Agreements "shall discharge all or any part of the liabilities and obligations of the Guarantor pursuant to this Guaranty."  Thus, the Guarantor cannot assert as a defense a challenge to the enforceability vel non of the Employment Agreements.

Such a legal defense is "eclipsed by the waiver-of-defenses clause contained in the Guaranty." *Id.* at 194. *See also Outsource Servs. Mgmt., LLC v. Ginsburg,* No. 08–5897, 2010

---

[10] Presumably, because of the posture of this case, no factual defenses have been asserted, such as failure of performance by plaintiffs.

WL 5088190, *14 (D. Minn. Dec. 7, 2010) ("Defendants expressly waived any defense based on the 'illegality, invalidity or unenforceability' of the Guaranteed Obligations or Loan….Thus, the Guaranties are enforceable even if the underlying obligations or agreements are invalid."); *Ursa Minor v. AON Fin. Prods.*, No. 00–2474, 2000 WL 1010278, *6 (S.D.N.Y. July 21, 2000) (holding that a guarantor had "specifically waived all defenses concerning the enforceability" of the underlying obligation, as the guarantee's "plain language…negate[d] any defense [it] may raise with regard to…'unenforceability, illegality, or invalidity'…"), *aff'd* 7 F. App'x 129 (2d Cir. 2001); *Minasian v. Standard Chartered Bank, PLC*, No. 93-6131, 1995 WL 530648, *13 (N.D. Ill. Sept. 8, 1995) (holding that, "[t]o the extent Plaintiffs argue that the obligations under the…Agreement are unenforceable, they cannot prevail" as they "waived this defense as part of their Guarantees," pursuant to which they "agreed to guarantee payment of all 'credit' extended...regardless [of] 'whether such indebtedness may be or hereafter becomes otherwise unenforceable'"; the court reasoned that "Courts will find a waiver when the guarantee is unconditional and there is an express waiver of the defense that the principal agreement is unenforceable."), *aff'd* 109 F.3d 1212 (7th Cir. 1997).

In sum, the Employment Agreements are not illusory and are enforceable.  Even if they are not legally enforceable, however, pursuant to the Guaranty, Mercatanti expressly waived any challenge to the legal enforceability of the Employment Agreements.  Accordingly, I shall deny defendant's motion to dismiss.

## II.  Plaintiffs' Motion For Summary Judgment

*Standard of Review*

Plaintiffs have moved for summary judgment pursuant to Fed. R. Civ. P. 56.  Under Rule 56(a), summary judgment is properly granted only "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing former Fed. R. Civ. P. 56(c)).   In resolving a summary judgment motion, the court must view the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co.,* 475 U.S. 574, 587 (1986); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

The non-moving party bears the burden of demonstrating that there are disputes of material fact so as to preclude the entry of judgment as a matter of law. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.   To meet this burden, the party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.*; *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).   Stated another way, "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts'" showing that there is a genuine dispute of material facts. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see Celotex Corp.*, 477 U.S. at 322-24.   A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If "the evidence is such that a reasonable jury could return a verdict" for the non-moving party, there is a dispute of material fact that precludes summary judgment. *Id.* at 248.   The "judge's function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. at 249.

Ordinarily, summary judgment is inappropriate when, as here, "the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co., supra,* 637 F.3d at 448. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)). Defendant has filed a Rule 56(d) affidavit, as discussed, *infra*.

### Contentions

The Mannings insist: "[T]he facts are not in dispute and judgment is proper as a matter of law because the Guaranty is plain and unambiguous and Mercatanti has waived all defenses." MSJ Memo at 1.[11] In their view, "the Guaranty unambiguously sets forth Mercatanti's obligations and the relevant trigger—non-payment—has occurred." *Id.* at 7. Claiming that "[u]nambiguous, unperformed, written guaranties like the one at issue here are routinely enforced at the summary judgment stage," the Mannings argue that they are entitled to summary judgment. *Id.* at 8.

In his opposition, Mercatanti reiterates the arguments he made with respect to the motion

---

[11] Most of the operative facts in this case, detailed above, are drawn from the documents appended to the Complaint. There is little in the way of facts that the Mannings' summary judgment submissions add to the record. They have submitted the Guaranty, the Employment Agreements, and the Amendments, and have appended the affidavits of the Mannings, as well as a "Calculation of the Interest (through November 30, 2011)." In the affidavits, at ¶ 9, the Mannings aver that the payments due on October 15, 2011, were not paid, and state, at ¶¶ 12-13, that they were not paid the outstanding sum under the Guaranty. The affidavits, at ¶ 17, include averments about legal fees and expenses, as well as interest, which are supported by plaintiffs' "Calculation of the Interest."

to dismiss: that the Employment Agreements are unenforceable; that he has not waived defenses; and that waiver of the defense of unenforceability is void as against public policy.  He also argues that "the waiver of defenses clause does not absolve Plaintiffs' [sic] of their obligation to prove every element of their breach of contract claim."  Opposition to MSJ at 5.[12]  Of import here, he has submitted a Rule 56(d) affidavit, the "Declaration of James D. Young," counsel for defendant and Nassau.  Young avers that plaintiffs "never performed any services for Nassau." *See* Young Declaration, ECF 24-1, ¶ 9(a) (stating that "Defendant expects to show that the Plaintiffs performed no services whatsoever under the Employment Agreements…."). Mercatanti adds: "[I]f this case moves forward[,]…Defendant will assert a second line of defenses that will require significant factual development in discovery.  Many of those facts, however, are not in the possession of Defendant but are rather in the possession of Plaintiffs and non-parties Nassau Broadcasting, L.P., and Nassau Broadcasting I, LLC, as detailed in the Fed. R. Civ. P. 56(d) declaration, filed herewith."  Opposition to MSJ at 6.  Defendant has also submitted with Young's Declaration, as Exhibit A, a document entitled "Reaffirmation of Guaranty of Payment and Performance" (the "Reaffirmation").

In his affidavit, Young details the factual disputes he believes should preclude an award of summary judgment prior to discovery.  They include "whether and to what extent the Plaintiffs actually performed services for Nassau, and regarding Plaintiffs' calculation and quantum of alleged damages," *id.* ¶ 6; "who 'controlled' or drafted the operative documents relevant to this matter," *id.* ¶ 7; the significance of the Reaffirmation, including the effect of its New Jersey choice of law provision, *id.* ¶ 8; "the intentions of the parties…and performance under the Employment Agreements, including the amendments thereto, and extrinsic evidence

---

[12] The Opposition does not contain page numbers.

concerning the meaning of those agreements," *id.* ¶ 9a; "the intentions of the parties and performance under the Guaranty," *id.* ¶ 9b; "the intentions of the parties…and performance under the Asset Purchase Agreement, Note and separate guaranty, and extrinsic evidence concerning the meaning of those agreements, which include the transfer of radio stations…, and what relationship, if any, those agreements had to the Employment Agreements and Guaranty in the within litigation," *id.* ¶ 9c; "[w]hether Maiming Broadcasting, Inc. was owned solely by the Plaintiffs, or by the Plaintiffs and others at the time the transaction documents were executed, and the intention and understanding of all shareholders with respect to the meaning of the Employment Agreements," *id.* ¶ 9d; "Plaintiffs [sic] efforts to mitigate their damages under the Employment Agreements, if any," *id.* ¶ 9e; and "Plaintiffs' claimed quantum of damages, including the reasonableness of any attorneys' fees sought." *Id.* ¶ 9f.

In plaintiffs' view, the Young affidavit "reveals no genuine issue of material fact," and they urge the court "not [to] require the parties to waste resources on irrelevant and potentially expensive discovery." MSJ Reply at 11. As to the alleged need for discovery concerning the parties' intentions under the Employment Agreements, they argue that "[a]n unambiguous agreement requires no extrinsic evidence to aid in its interpretation." *Id.* at 8. Moreover, they regard as "irrelevant" the question of whether the Mannings provided services to Nassau, *id.*, and, with respect to the Reaffirmation, assert that it "does not give rise to the need for discovery," as "it simply supports the Mannings' argument that the Employment Agreements are enforceable." *Id.* at 8-9. The Mannings also view as unnecessary any factual development as to the parties' intentions under the Asset Purchase Agreement, arguing that the document "is relevant only to the extent it serves as consideration for the Employment Agreements and the Guaranty…." *Id.* at 9. They also assert that the identity of the ownership of Manning

Broadcasting, Inc. and the identity of the party who controlled the drafting of the Employment Agreements and Guaranty[13] are "irrelevant," *id.* at 10, and that the question of mitigation of damages was waived. *Id*. Although they concede that, as to the matter of attorneys' fees, "the issue is not ready for final disposition," they argue that the Court should "enter[] a judgment as to liability and other damages (*i.e.*, principal and interest), leaving open the issue of appropriate attorneys' fees…." *Id*.

*Discussion*

As I have made clear, defendant has not set forth a legal impediment to enforcement of the underlying Employment Agreements; I have found that the Employment Agreements are supported by valid consideration, but, even if they are not, Mercatanti waived his right to contest the legal enforceability of the Employment Agreements. This conclusion does not, however, compel the conclusion that plaintiffs are entitled to summary judgment.

"[A] breach of contract is a failure, *without legal excuse*, to perform any promise that forms the whole or part of a contract.[1]" WILLISTON ON CONTRACTS § 63:1 (emphasis added). Mercatanti has asserted that "if this case moves forward," he "will assert a second line of defenses," separate and apart from the matter of enforceability, and that asserting the "second line of defenses" will "require significant factual development in discovery." Opposition to MSJ at 6.

To be sure, defendant has not elucidated the basis of the defenses he intends to raise. Although several seem either irrelevant or specious, he has included a factual claim as to plaintiffs' performance. Summary judgment is ordinarily inappropriate when "the parties have

---

[13] In any event, plaintiffs insist that it was defense counsel who controlled the drafting of those documents, and indicate that they have reached out to defense counsel to offer proof of this assertion. *Id.* at 10 n.5.

not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co., supra,* 637 F.3d at 448. In the current posture of the case, it is not appropriate for the Court to presuppose the outcome of discovery and dismiss defendant's contentions as "irrelevant," as plaintiffs urge.

Nor am I convinced that the denial of plaintiffs' motion will unduly "require [them] to waste resources on irrelevant and potentially expensive discovery." MSJ Reply at 11. The issues in this case do not appear to be unduly complex. Moreover, plaintiffs concede that, as to the matter of attorneys' fees, "the issue is not ready for final disposition." *Id.* at 10. Plaintiffs, then, concede that some level of discovery will be necessary, regardless of the outcome here. And, there is a pending parallel case, *Manning Broadcasting, Inc. v. Mercatanti*, 12-cv-00195 (the "parallel case"). Although the parallel case has a different plaintiff, Manning Broadcasting, Inc., as opposed to the Mannings, it centers on the same nucleus of operative facts as the case at bar, and the parties in that case are represented by the same attorneys as the parties here. Although a dispositive motion has been filed in the parallel case, *see* ECF 8, "Defendant's Motion To Dismiss *Portion* Of Complaint With Prejudice" (emphasis added), it will not resolve the matter in its entirety, even if granted, and that case will proceed through some discovery.

I am also mindful that the Fourth Circuit has "emphasized repeatedly the drastic nature of the summary judgment remedy and…held that it should not be granted unless it is perfectly clear that there are no genuine issues of material fact in the case." *Ballinger v. North Carolina Agric. Extension Serv.*, 815 F.2d 1001, 1004-05 (4th Cir. 1987). At this juncture, in light of the averments in the Opposition, coupled with the Young affidavit, and before any discovery has taken place, I cannot conclude that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Accordingly, I will permit defendant to pursue the "second line of defenses" to which he alludes.  Opposition to MSJ at 6.  However, plaintiffs may renew their arguments in a second motion for summary judgment when they deem appropriate, either during or at the conclusion of discovery.

### Conclusion

For the foregoing reasons, the Court will deny "Defendant's Motion To Dismiss Complaint With Prejudice" (ECF 16) and "Plaintiffs' Motion For Summary Judgment" (ECF 20).  A separate Order, consistent with this Opinion, follows.

Date: August 24, 2012                                    /s/_____
                                                         Ellen Lipton Hollander
                                                         United States District Judge