IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EUGENE J. MANNING, et al.,

*Plaintiffs,*

v.

Civil Action No.: 11-cv-2964

LOUIS F. MERCATANTI, JR.,

*Defendant.*

**MEMORANDUM OPINION**

Eugene J. Manning and J. Frederick Manning (the "Mannings") brought suit against Louis F. Mercatanti, Jr., complaining that Mercatanti failed to pay them sums due pursuant to a guaranty that he executed on April 13, 2005 (the "Guaranty," ECF 1-1), as "security for the repayment" of obligations due to plaintiffs under employment agreements that the Mannings concurrently executed with Nassau Broadcasting I, LLC and Nassau Broadcasting Partners, LP. *See* Complaint (ECF 1).[1] Copies of the Guaranty, and each employment agreement, are appended to the Complaint as plaintiffs' Exhibits A, B, and D, respectively. In particular, plaintiffs seek to recover $1,472,000 under the Guaranty, plus interest and attorneys' fees. *Id.*

The Mannings have filed a motion for partial summary judgment ("Motion," ECF 37), which has been fully briefed.[2] No hearing is necessary to resolve it.[3] *See* Local Rule 105.6. For

---

[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

[2] The Mannings have indicated that, if successful on summary judgment, they will file separately a motion for attorneys' fees and costs. *See* ECF 37 at 1 n.1.

[3] In resolving the motions, I have also considered the Mannings' memorandum in support of their summary judgment motion ("Memo," ECF 37-1), their reply brief ("Reply," ECF 41), and the Declarations attached thereto (ECF 41-1–3). I have also considered Mercatanti's Opposition (ECF 40), which incorporates the arguments he advanced in his brief in the

the reasons stated below, I will grant the Motion.

### Factual Background[4]

On December 17, 2004, pursuant to an Asset Purchase Agreement, Manning Broadcasting, Inc. agreed to sell and/or assign to Nassau Broadcasting I, LLC and Nassau Broadcasting III, LLC, "the assets and property used in the operation of two radio stations" in Hagerstown, Maryland. *See* Guaranty at 1. Thereafter, on April 13, 2005, the Mannings each entered into identical employment agreements (the "Employment Agreements") with Nassau Broadcasting I, LLC and its parent, Nassau Broadcasting Partners, L.P. (collectively, "Nassau").[5]

The Employment Agreements provide for the Mannings' employment for ten years, commencing in 2005, upon the closing for the transfer of the radio stations. *E.g.*, Complaint Ex. B ¶ 1. Paragraph 5 of the Employment Agreements, titled "<u>Termination</u>," states: "This contract shall terminate at the Termination Date, unless earlier terminated by written agreement of [Nassau] or [the Mannings]."

Under the Employment Agreements, the Mannings are obligated to provide "advisory

---

companion case of *Manning Broadcasting, Inc. v. Louis Mercatanti, Jr.*, Civ No. ELH-12-0195 at ECF 24. For convenience, I refer to both documents together as Mercatanti's "Opposition." All page references to the "Opposition" or "Opp." are to ECF 24 in the companion case, unless otherwise stated.

[4] I previously recounted the facts of the case in ruling on Mercatanti's motion to dismiss (ECF 16) and the Mannings' prior motion for summary judgment. ECF 20. *See* Memorandum Opinion, ECF 31. Because the facts were undisputed, *id.* at 2 n.3, and the parties have not engaged in any discovery, the facts described here are substantially similar to those described in the earlier Opinion. In any event, I incorporate here by reference the facts set forth in ECF 31.

[5] Maryland is the forum state, and its law governs this Court's choice-of-law analysis. *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011). Under Maryland law, "the parties to a contract may agree as to the law which will govern their transaction, even as to issues going to the validity of the contract." *Taylor v. Lotus Dev. Corp.*, 906 F. Supp. 290, 294 (D. Md. 1995). The Employment Agreements and the Guaranty contain choice of law provisions that stipulate to the application of Maryland law. *See* Complaint Exs. A ¶ 16; B ¶ 13; D ¶ 13. Moreover, the parties' submissions presuppose the application of Maryland law. Accordingly, I apply Maryland law here.

services" with respect to both radio stations, although they are not "required to devote any minimum number of hours," nor are they required to be "physically located at any office of [Nassau] or at the [radio s]tations." *Id.* ¶ 2. In exchange for these services, the Mannings are to receive two million dollars each, payable over ten years, ending in July 2015. *Id.* ¶ 3; *id.* at Attachment 1. And, under Paragraph 3 of the Employment Agreements, their compensation is due "regardless of whether [the Mannings have] resigned" or been "fired, with or without cause."

Initially, plaintiffs were to be paid in sixteen increments of $50,000 every three months, followed by a lump sum installment of $1,080,000, and then twenty-four incremental payments of $5,000 every three months. *Id.*; *see also id.* at Attachment 1. However, by amendments to the Employment Agreements on August 27, 2009 (the "Amendments"), the compensation schedule was modified; beginning on May 15, 2009, the Mannings were to receive monthly payments of $16,000 for the remainder of the ten year term. *See* Complaint Ex. C ¶ 1; *see also id.* at Attachment A. The Amendments are appended to the Complaint as plaintiffs' Exhibits C and E.

Nassau did not pay the Mannings the $16,000 payments due on October 15, 2011. *See* Memorandum Opinion (ECF 31) at 3. The Employment Agreements state that, if Nassau "fails to render payment of any amount due hereunder when said payment is due and payable," it "constitute[s] an event of default." Complaint Exs. B and D, ¶ 14. And, the Amendments provide that, in the event of default, the balance due under the Employment Agreements "shall immediately and automatically become due and payable in full . . . ." Complaint Exs. C and E, ¶ 2(b)(v).

As of October 15, 2011, each plaintiff was owed $736,000 under the Employment Agreements. *See* Complaint Exs. C and E at Attachment A. Nassau has not paid the Mannings the remaining sums due under the Employment Agreements. Memorandum Opinion at 3–4.

Concurrent with the Employment Agreements, Mercatanti executed the Guaranty on April 13, 2005, as security for the repayment of Nassau's obligations under the Employment Agreements. The Guaranty identifies Mercatanti as guarantor and the Mannings as beneficiaries. *See* Guaranty at 1. By its terms, it guarantees to the Mannings the "full and prompt payment" of Nassau's obligations under the Employment Agreements. *Id.*

It is undisputed that "Mercatanti has not paid the Mannings any amounts under the Guaranty." Memorandum Opinion at 4. As a result, the Mannings assert: "Mercatanti's failure to pay the Mannings in full all sums due under the Guaranty, including the amounts due (as accelerated) under the Employment Agreements and the amounts representing the Mannings' costs and expenses, constitutes a breach of the Guaranty . . . ." Complaint ¶ 22. The Mannings each seek $736,000, for a total of $1,472,000. *Id.* at 5.[6]

In my prior Memorandum Opinion, docketed on August 24, 2012 (ECF 31), I ruled that the Employment Agreements are enforceable and that, regardless, Mercatanti waived his right to contest the legal enforceability of the Employment Agreements. Accordingly, I denied Mercatanti's motion to dismiss. However, I also denied plaintiffs' motion for summary judgment. I explained, ECF 31 at 26–27 (citations and quotation marks omitted):

> A breach of contract is a failure, *without legal excuse*, to perform any promise that forms the whole or part of a contract. Mercatanti has asserted that "if this case moves forward," he "will assert a second line of defenses," separate and apart from the matter of enforceability, and that asserting the "second line of defenses" will "require significant factual development in discovery."
>
> To be sure, defendant has not elucidated the basis of the defenses he intends to raise. Although several seem either irrelevant or specious, he has included a factual claim as to plaintiffs' performance [*i.e.* that the Plaintiffs did not perform any services under the Employment Agreements]. Summary judgment is ordinarily inappropriate when the parties have not had an opportunity

---

[6] As noted, the Mannings assert that they "will pursue legal fees and costs separately" from this Motion. Memo at 1 n.1.

for reasonable discovery. In the current posture of the case, it is not appropriate for the Court to presuppose the outcome of discovery and dismiss defendant's contentions as "irrelevant," as plaintiffs urge.

Notwithstanding Mercatanti's assertion that discovery was needed to elucidate his defenses, the parties did not conduct any discovery. And, the discovery period closed on December 22, 2012. *See* ECF 28. *See also* Joint Status Report dated February 26, 2013 (ECF 36).

Bankruptcy proceedings were commenced on September 15, 2011, in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") as to several Nassau entities. Declaration of Jerry Hall, Esquire ("Hall Dec.," ECF 25-2) ¶ 2.[7] The case is captioned *In re Nassau Broadcasting Partners, et al.*, Case No. 11-12934 (KG) ("Nassau Case"). Hall Dec. ¶ 3. On February 8, 2012, Nassau filed a motion with the Bankruptcy Court requesting authority to approve auction procedures by which Nassau would sell substantially all of its assets, including several radio stations, at auction ("Sale Motion"). Hall Dec. ¶ 6; Ex. C to Hall Dec. On February 22, 2012, the Bankruptcy Court entered an order approving the auction procedures set forth in the Sale Motion. Hall Dec. ¶ 7, Ex. D to Hall Dec.

Nassau conducted the auction for its radio stations on May 3, 2012. Hall Dec. ¶ 8. Manning Co. and Mercatanti attended the auction as bidders. Hall Dec. ¶ 9, Ex. E to Hall Dec. Manning Co. bid on stations WAFY, WARK and WWEG ("Subject Stations"), located in Frederick and Hagerstown, Maryland. Hall Dec. ¶ 10, Ex. F to Hall Dec. Although other bidders appeared and bid on the Subject Stations, Manning Co. was selected by Nassau as having made the highest and best bid at $6.4 million in cash (plus cure amounts). *Id.* Mercatanti

---

[7] Mr. Hall, an attorney with Pillsbury Winthrop Shaw Pittman, LLP, represents the Mannings in this case and in the Bankruptcy Court in regard to the Nassau entities.

reserved his right to object to Manning Co.'s successful bid. Hall Dec. ¶ 9, Ex. E to Hall Dec. at 64.

On May 4, 2012, Nassau filed with the Bankruptcy Court a Notice of Successful Bidders at 363 Auction Sale. Hall Dec. ¶ 11, Ex. F to Hall Dec. Manning Co. is listed as the prevailing bidder for the Subject Stations. *Id.*

The Bankruptcy Court conducted an evidentiary hearing on May 7, 2012, in regard to Nassau's request to sell the Subject Stations to Manning Co. pursuant to an Asset Purchase Agreement (the "Purchase Agreement"). Hall Dec. ¶ 12. Mercatanti appeared at this hearing, but interposed no objection to the proposed sale of the Subject Stations to Manning Co. Hall Dec. ¶ 13. During the hearing, specific mention was made of Manning Co.'s release of Nassau and reservation of rights against Mercatanti. In particular, Nassau's counsel stated, Ex. G to Hall Dec. at 58: "The releases would go to the Manning Broadcasting Company and the two principles, Gene and Frederick Manning, and the estates will get releases, but there will be no releases of the third parties from Manning Broadcasting. And, principally, that's because Mr. Mercatanti has purportedly guaranteed obligations to Manning Broadcasting."

On May 8, 2012, the Bankruptcy Court entered its order approving the sale of the Subject Stations to Manning Co. ("Sale Order," Ex. H to Hall Dec.). Hall Dec. ¶ 15. The Sale Order stated, *inter alia*: "The Auction process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Assets," Sale Order ¶ E; "The consideration being paid by [Manning Co.] to acquire the Assets constitutes reasonably equivalent value and fair consideration . . . ." *Id.* ¶ G; and, "The sale of the Assets and the consideration provided by [Manning Co.] under the Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute a

transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law." *Id.* ¶ 26.

Section 2.1 of the Purchase Agreement describes the consideration to be paid by Manning Co. to Nassau in exchange for the Subject Stations. Hall Dec. ¶ 15 n.2, Ex. I to Hall Dec. Specifically, Manning Co. agreed to pay cash in the amount of $6.4 million and to cure any monetary defaults owing in connection with any leases or contracts assigned by Nassau to Manning Co. Hall Dec. ¶ 15, Ex. I to Hall Dec. at §2.1. Further, the Purchase Agreement provides: "[Manning Co.] and [Nassau] shall each execute global mutual releases waiving and releasing all claims and causes of action (known and unknown) they may have against each other . . . ." Ex I. to Hall Dec. at § 14.24. But, it also contains an express reservation that states, Ex. I to Hall Dec. at § 14.27: "Nothing in this Agreement shall affect any rights, claims or causes of action [Manning Co.] (or any of its principals) has against Louis Mercatanti."

Additional facts are included in the Discussion.

## Standard of Review

Plaintiffs have moved for summary judgment pursuant to Fed. R. Civ. P. 56. Under Rule 56(a), summary judgment is properly granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing former Fed. R. Civ. P. 56(c)). In resolving a summary judgment motion, the court must view the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co.,* 475 U.S. 574, 587 (1986); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

The non-moving party bears the burden of demonstrating that there are disputes of material fact so as to preclude the entry of judgment as a matter of law. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. To meet this burden, the party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.*; *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). Stated another way, "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts'" showing that there is a genuine dispute of material facts. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see Celotex Corp.*, 477 U.S. at 322-24. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In reviewing a motion for summary judgment, the "judge's function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. If "the evidence is such that a reasonable jury could return a verdict" for the non-moving party, there is a dispute of material fact that precludes summary judgment. *Id.* at 248.

### Contentions

The Mannings contend that "the Court has found every necessary predicate for determining that [Mercatanti] is liable on his Guaranty." Memo at 1–2. They observe that the Court denied their prior motion for summary judgment to permit Mercatanti to develop a factual record in support of the "second line of defenses" that Mercatanti claimed he would pursue. Yet, Mercatanti declined to engage in discovery, and therefore has "concede[d] . . . that his second

line defenses are either irrelevant or specious, but in any event, meritless." Memo at 4 (internal quotation marks omitted).

Mercatanti does not dispute the facts underlying the Mannings' Motion. Rather, he raises four arguments in his Opposition that he claims preclude entry of summary judgment. First, he argues that the Motion was untimely filed and therefore should be denied. Opp. at 7. Second, he argues that the release of Nassau (the principal debtor) in the Purchase Agreement also serves to discharge the debt of Mercatanti (the guarantor). Opp. at 2. Third, he argues that the Mannings' rights against Mercatanti "were extinguished by the steeply discounted cash value paid by Manning under the [Purchase Agreement]." *Id.* at 3. Fourth, he argues that the Mannings performed no services under the Employment Agreement, thereby creating a dispute of material fact that precludes summary judgment. ECF 40 at 1.

For the reasons that follow, none of defendant's arguments precludes entry of summary judgment. Accordingly, I will grant the Motion.

## Discussion

Mercatanti first contends that the Motion should be denied as untimely.

On February 17, 2012, this Court approved a Scheduling Order proposed by the parties (ECF 26, 28), which provided, *inter alia*, a deadline of 160 days for the filing of dispositive motions, measured from the date the Court rendered a decision on the then-pending dispositive motions. *Id.* at 1–2. I rendered a decision on those motions on August 27, 2012. *See* ECF 32. Therefore, pursuant to the schedule set out in ECF 28, additional dispositive motions were due by February 3, 2013. *See* Memo to Counsel of February 12, 2013 (ECF 35) ("Thus, the deadline for dispositive motions expired on February 3, 2013."). No dispositive motions were filed by that date, however.

In a Status Report filed on February 26, 2013, the parties advised that they were engaged in "direct settlement talks" but that "Plaintiffs intend to resubmit their motion for summary judgment." ECF 36. The Status Report further provided: "Defendant objects to Plaintiffs' filing of a summary judgment motion after the February 3, 2013 deadline." *Id.* On March 8, 2013, plaintiffs filed their Motion. ECF 37.

Plaintiffs argue that their Motion was timely because, in the Court's prior Memorandum Opinion, the Court stated that "plaintiffs may renew their arguments in a second motion for summary judgment when they deem appropriate, either during or at the conclusion of discovery." ECF 31 at 28. Plaintiffs appear to be suggesting that this statement effectively amended the scheduling order and allowed them to file their Motion more than 160 days after the Order was entered. Reply at 1 n.3.

In light of the explicit statement in the Court's Memo to Counsel of February 12, 2013, stating that "the deadline for dispositive motions expired on February 3, 2013," ECF 35, plaintiffs' explanation lacks merit. Regardless, Fed. R. Civ. P. 6(b)(1)(B) permits a district court to extend a deadline "on motion made after the time has expired if the party failed to act because of excusable neglect." I will construe plaintiffs' Motion to include a request for leave to file an untimely summary judgment motion, and I next consider whether plaintiffs' neglect was excusable. *Cf. Axxiom Mfg., Inc. v. McCoy Investments, Inc.*, 846 F. Supp. 2d 732, 736 (S.D. Tex. 2012) ("The court will construe Axxiom's response as a motion for leave to file an untimely response, and that motion is granted."); *Hall v. Marshall*, 479 F. Supp. 2d 304, 311 (E.D.N.Y. 2007) ("the [Court] construes the amended complaint as a motion for leave to amend.").

Whether neglect is excusable is "at bottom an equitable [inquiry], taking account of all relevant circumstances," including: (1) the danger of prejudice to the non-movant; (2) the length

of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993); *see also Fernandes v. Craine*, ___ Fed. App'x ___, Civ. No. 13-1298, 2013 WL 4427809 (4th Cir. Aug. 20, 2013).

In my view, these factors weigh in favor of the Mannings. There is little danger of prejudice to Mercatanti, as he does not dispute any of the material facts. Indeed, Mercatanti does not suggest that he has been prejudiced in any way. Moreover, the delay of five weeks was relatively short, and it had no impact on proceedings as no trial date had been set. The reason for the delay, although not expressly stated by plaintiffs, appears to be that the parties were engaged in settlement discussions at the time of the original deadline for dispositive motions. Finally, there is no suggestion that the Mannings acted in bad faith. Accordingly, I will exercise my discretion under Fed. R. Civ. P. 6(b)(1)(B) and extend the deadline for the filing of dispositive motions up to and including March 8, 2013, thereby rendering the Motion timely.

Next, Mercatanti argues that the Mannings' release of Nassau also discharged the debt of Mercatanti, the guarantor of Nassau's debt. Opp. at 7–8. In support of this claim, Mercatanti cites *Noma Electric Corp. v. Fidelity & Deposit Co. of Maryland*, 201 Md. 407, 94 A.2d 277 (1953), for the proposition that "the release of a principal discharges the surety." However, that general principle does not apply when the creditor expressly reserves his rights against the surety. *Chicago Title Ins. Co. v. Lumbermen's Mut. Cas. Co.*, 120 Md. App. 538, 555, 707 A.2d 913, 921 (1998). And, it is undisputed that the Purchase Agreement expressly provides, Ex. I to Hall Dec. at § 14.27: "Nothing in this Agreement shall affect any rights, claims or causes of

action [Manning Co.] (or any of its principals) has against Louis Mercatanti." Accordingly, the Purchase Agreement did not discharge Mercatanti's debt.

In addition, Mercatanti argues that the Mannings received an approximately "$2 million cash discount on the fair market value" of the Subject Stations when it agreed to release Nassau, and that Maryland law requires this "discount" to be credited to Mercatanti, the guarantor. Opp. at 2; *see* Opp. at 9 (citing Restatement (Third) of Suretyship & Guaranty § 39(c)(i)). In other words, Mercatanti's contention is that the Mannings received more than $2 million in exchange for releasing Nassau's debt, and that this amount should be credited to the guarantor to preclude the Mannings from double recovery on the same debt.

This argument is a non-starter. The Mannings did not purchase the Subject Stations or receive consideration for their release of Nassau. Rather, it was the corporate entity, Manning Co., that purchased the Subject Stations at auction. *See* Declaration of J. Frederick Manning dated April 29, 2013 ("F. Manning Dec.," ECF 41-2) ¶¶ 8–9. To the extent that any offset is due Mercatanti, it would only be against the separate debt that Mercatanti owes Manning Co. Thus, this argument has no application to the Guaranty held by the Mannings and cannot preclude entry of summary judgment in their favor.

Even if the argument were applicable, the express contractual language in the Guaranty renders the general rule inapplicable. The Guaranty expressly provides that Mercatanti's debt would not be discharged by the release or modification of the principal's debt. In particular, paragraph 4 of the Guaranty provides, in relevant part, that the Mannings "may from time to time, and without exonerating or releasing the Guarantor in any way under this Guaranty: . . . (iii) amend, modify, extend, accelerate or waive in any manner any of the provisions, terms, or

conditions of the Guaranteed Obligations, all as [the Mannings] may consider expedient or appropriate in its sole discretion." Guaranty ¶ 4. Similarly, paragraph 5 provides, in part:

> Without limiting the generality of the foregoing, the Guarantor agrees that until each and every one of the covenants and agreements of this Guaranty is fully performed, the Guarantor's undertakings hereunder shall not be released, in whole or in part, by any action or thing which might, but for this section of the Guaranty, be deemed a legal or equitable discharge of a surety or guarantor, or . . . by reason of further dealings between Nassau on the one hand and [the Mannings] on the other hand, or any other guarantor or surety, and the Guarantor, to the extent permitted by applicable law, hereby expressly waives and surrenders any defense to its liability hereunder, or any right of counterclaim or offset of any nature or description which it may have or which may exist based upon, and shall be deemed to have consented to, any of the foregoing acts, omissions, things, agreements or waivers.

Mercatanti's final argument is that the Mannings performed no services under the Employment Agreements, and thus they are not entitled to payment. In other words, he appears to claim that the Mannings' nonperformance constitutes an affirmative defense to the allegations of breach, and therefore trial is necessary to resolve the question of whether the Mannings performed on the Employment Agreements. However, the only evidence he has offered in support of this claim is his own Declaration of April 4, 2013, which was attached as an exhibit to his Opposition brief in the parallel case. *See* Declaration of Louis F. Mercatanti ("Mercatanti Dec.," ECF 24-2 in ELH 12-00195) ¶ 11. In the Declaration, Mercatanti states, *id.* (emphasis added):

> To put the discount in perspective, when considering the "Employment Agreements" of *Eugene and J. Frederick Manning, individuals who I can and will testify on personal knowledge never performed services for Nassau Broadcasting Partners, L.P. or its affiliates*, the Nassau APA purchase price, and the price paid for WAFY-FM, Manning obtained for $6,400,000 assets that originally cost over $32,000,000.

The italicized portion of the cited paragraph is the only evidence in the record supporting the assertion that the Mannings did not perform any services.[8] However, "self-serving statements in affidavits without factual support in the record carry no weight on summary judgment." *Jiggets ex rel. S.J. v. Long*, 510 F. App'x 278, 286 (4th Cir. 2013) (citing *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004)); *see also Moret v. Geren*, 494 F. Supp. 2d 329, 338 (D. Md. 2007). Mercatanti had every opportunity to compile factual evidence to support his claim of non-performance, but he has mustered only a convoluted paragraph in a post-discovery Declaration. Standing alone, this Declaration is insufficient to defeat summary judgment.

Moreover, and notably, the Employment Agreements provide only that the Mannings "shall devote such business time as [they] deem[] reasonably necessary to provide [advisory] services, but shall not be required to devote any minimum number of hours." *See* Memorandum Opinion at 6. As I noted in my prior Memorandum Opinion, the Employment Agreements are akin to "open terms" contracts, which "are premised upon a mutually enforceable agreement that the non-specific standard selected by the parties will be interpreted and applied by a fact-finder 'after the fact,' based on all the circumstances surrounding the parties' course of dealing." *8621 Ltd. P'ship v. LDG, Inc.*, 169 Md. App. 214, 229-30, 900 A.2d 259, 268 (citation omitted), *cert. denied*, 394 Md. 480, 906 A.2d 943 (2006); *see also* Mark P. Gergen, *The Use of Open Terms in Contract*, 92 Colum. L. Rev. 997, 1000 (1992) (stating that contracts using open terms usually require performance "under a negligence-like term" such as reasonableness).

---

[8] The Mannings assert that they "did provide services to Nassau," Reply at 41 n.7, but they have not submitted any evidence on the point. Instead, they maintain that "the issue need not be decided for the Court to grant summary judgment," *id.*, for reasons discussed, *infra*.

Accordingly, the Mannings' alleged failure to provide services to Nassau would only constitute a breach of contract if the circumstances surrounding the parties' course of dealing dictated that provision of services was reasonably required. However, Mercatanti includes no factual support, in his Declaration or elsewhere, for the notion that Nassau requested services from the Mannings but they failed to perform, or that the Mannings' services were reasonably necessary. Accordingly, the summary judgment record does not contain evidence from which a reasonable jury could conclude that the Mannings breached the Employment Agreements. *See Dobkin v. Johns Hopkins Univ.*, 172 F.3d 43 (4th Cir. 1999) ("Summary judgment is appropriately granted when a party having the burden of proof on a particular claim is unable either to produce admissible evidence or point in the record to admissible evidence which would be sufficient to support a jury verdict on each element of that claim.").

## Conclusion

For the foregoing reasons, the Court will grant plaintiffs' Motion for Partial Summary Judgment (ECF 37). A separate Order, consistent with this Opinion, follows.

Date: December 23, 2013 /s/
Ellen Lipton Hollander
United States District Judge