IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EUGENE J. MANNING, *et al.*
    *Plaintiffs*,

v.

LOUIS F. MERCATANTI, JR.,
    *Defendant*.

Civil Action No. ELH-11-2964

---

MANNING BROADCASTING, INC.
    *Plaintiff*,

v.

LOUIS F. MERCATANTI, JR.,
    *Defendant*.

Civil Action No. ELH-12-00195

**MEMORANDUM OPINION**

In these related cases, the Court granted summary judgment to the plaintiffs on December 23, 2014 and December 24, 2014. *See* ECF 45 in 11-cv-02964; ECF 27 in 12-cv-00195. Plaintiffs in both cases are represented by the same counsel, and they have now filed a Motion for Attorney's Fees and Costs in each case. *See* ECF 46 in 11-cv-2964; ECF 28 in 12-cv-00195.[1] The motion and accompanying memorandum filed in each case is substantively identical and seeks recovery of the fees and costs incurred in both cases. However, plaintiffs make clear that they "intend to collect the legal fees and costs they incurred only once." ECF 46-1 in 11-cv-

---

[1] Along with their motion in case 11-cv-02964, plaintiffs' submitted a memorandum in support ("Memo," ECF 46-1), and exhibits. Defendant responded ("Opp.," ECF 47), also with exhibits. Plaintiffs replied ("Reply," ECF 48), with one exhibit. Similarly, in case 12-cv-00195, plaintiff submitted a memorandum in support of its motion (ECF 28-1), and exhibits. Defendant responded (ECF 29), with exhibits, and plaintiff replied (ECF 30), with an exhibit.

The motions, memoranda, and exhibits filed in each case are substantively identical. Therefore, on occasion, I cite only to the filings in 11-cv-02964.

02964 at 1 n.1. The facts of each case are set forth in the memorandum opinions I issued in each case, and are incorporated here. *See* ECF 31, ECF 44 in 11-cv-02964; ECF 17, ECF 26 in 12-cv-00195. Nevertheless, I will again summarize the facts of each case.

Case 11-cv-02964 concerns identical employment agreements entered into by plaintiffs Eugene J. Manning and J. Frederick Manning (the "Mannings") on the one hand, and Nassau Broadcasting I, LLC and its parent, Nassau Broadcasting Partners, L.P. (collectively, "Nassau") on the other. Concurrent with the employment agreements, defendant Louis F. Mercatanti, Jr. executed a guaranty as security for the repayment of Nassau's obligations under the employment agreements. The guaranty identifies Mercatanti as guarantor and the Mannings as beneficiaries. The Mannings filed suit against Mercatanti after Nassau failed to satisfy its obligations under the employment agreements and Mercatanti failed to satisfy his obligations under the guaranty. I ruled that the employment agreements were enforceable, *see* ECF 31 in 11-cv-02964, and that Mercatanti's proffered defenses to an entry of summary judgment against him were unavailing. *See* ECF 44 in 11-cv-02964. Accordingly, I ordered the entry of judgment in favor of the Mannings and against Mercatanti in the amount of $1,472,000.00. *See* ECF 45 in 11-cv-02964.

Case 12-cv-00195 concerns an Asset Purchase Agreement ("APA"), pursuant to which plaintiff Manning Broadcasting, Inc. ("Manning Co.") agreed to sell to Nassau two radio stations in Hagerstown, Maryland. In connection with the APA, Nassau executed a promissory note (the "Note") dated April 13, 2005, "in lieu of cash for a portion of the purchase price" for the "acquisition of the [radio s]tations' assets . . . ." As a condition of the sale to Nassau, defendant Mercatanti signed a guaranty, which guarantees payment under the Note. However, Nassau failed to pay the amounts outstanding under the Note. As a result, Manning Co. filed suit to collect the amounts outstanding from Mercatanti, pursuant to his guaranty. By Memorandum

Opinion and Order, I ruled that Mercatanti is liable for the outstanding amount on the Note, with the amount of judgment to be determined. ECF 26, ECF 27 in 12-cv-00195.[2]

The guaranties that formed the basis of Mercatanti's liability in each case also contain fee-shifting provisions, pursuant to which plaintiffs are entitled to "[a]ll costs and expenses, including reasonable attorney's fees and expenses, incurred . . . in obtaining performance of or collecting payments due under this Guaranty . . . ." *See, e.g.*, ECF 1-2 in 11-cv-02964. Citing those provisions, counsel for plaintiff seek $281,252 in legal fees and $1,437 in costs. Mercatanti does not dispute his obligation to pay plaintiffs' attorney's reasonable fees and costs; however, he claims that the amount requested by plaintiffs' counsel is "excessive." *See*, *e.g.*, Opp. at 1.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6; *SunTrust Bank v. Goldman*, 201 Md. App. 390, 402, 29 A.3d 724, 730 (2011) (stating that a court "need not necessarily hold an evidentiary hearing to determine an appropriate award" of attorney's fees). For the reasons that follow, I will award plaintiffs a total of $139,894.91 in attorney's fees and $1,437 in costs.

**Discussion**

In a diversity action such as this, *see* 28 U.S.C. § 1332, a party's right to recover attorney's fees is ordinarily governed by state law. *See IOM Corp. v. Brown Forman Corp.*, 627 F.3d 440, 451 (1st Cir. 2010); *McCollum v. State Farm Ins. Co.*, 376 F. App'x 217, 220 (3d Cir. 2010); *Ranger Const. Co. v. Prince William County Sch. Bd.*, 605 F.2d 1298, 1301 (4th Cir.

---

[2] Manning Co. asserted in its motion for summary judgment that $1,082,812.50 is due on the Note. However, they submitted no documentary evidence regarding the amount outstanding. Therefore, my Memorandum Opinion addressed only the question of liability *vel non*, and not the extent of that liability. My Order of December 24, 2012 (ECF 27 in 12-cv-00195) stated: "If plaintiff intends to move for summary judgment on the issue of the amount due on the Note, plaintiff is directed to submit such motion within 21 days after this Order is docketed." Plaintiff has not filed any such motion.

1979); *Rohn Prods. Int'l, LC v. Sofitel Capital Corp.*, Civ. No. WDQ-06-504, 2010 WL 3943747, at *4 n.13 (D. Md. Oct. 7, 2010). Maryland is the forum state, and its law governs this Court's choice-of-law analysis. *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011). Under Maryland law, "the parties to a contract may agree as to the law which will govern their transaction." *Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 517 (D. Md. 2011) (internal quotation marks omitted). The Employment Agreements and the Guaranty contain choice of law provisions that stipulate to the application of Maryland law. *See, e.g.*, ECF 2 at ¶ 16. Moreover, the parties' submissions presuppose the application of Maryland law. Accordingly, I will apply Maryland law here.

"Contract provisions providing for awards of attorney's fees to the prevailing party in litigation under the contract generally are valid and enforceable in Maryland." *Myers v. Kayhoe*, 391 Md. 188, 207, 892 A.2d 520, 532 (2006). However, "Maryland law limits the amount of contractual attorneys [sic] fees to actual fees incurred, regardless of whether the contract provides for a greater amount." *SunTrust*, 201 Md. App. at 397, 29 A.3d at 727. Moreover, "[e]ven in the absence of a contract term limiting recovery to reasonable fees, trial courts are required to read such a term into the contract and examine the prevailing party's fee request for reasonableness." *Myers*, 391 Md. at 207, 892 A.2d at 532; *see also Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 316, 844 A.2d 460, 478 (2004); *SunTrust*, 201 Md. App. at 401, 29 A.3d at 730 ("Current law allows a court to grant only those attorney's fees it finds reasonable."). Thus, "courts must routinely undertake an inquiry into the reasonableness of any proposed fee before settling on an award." *Monmouth Meadows Homeowners Ass'n, Inc. v. Hamilton*, 416 Md. 325, 333, 7 A.3d 1, 5 (2010). The "reasonableness of attorney's fees is a factual determination within the sound discretion of the court." *Myers*, 391 Md. at 207, 892 A.2d at 532.

"'The burden is on the party seeking recovery to provide the evidence necessary for the fact finder to evaluate the reasonableness of the fees.'" *Ulico*, 380 Md. at 316, 844 A.2d at 478 (citation omitted). Therefore, the party seeking a fee award must provide "'detailed records'" that specify "'the services performed, by whom they were performed, the time expended thereon, and the hourly rates charged.'" *Rauch v. McCall*, 134 Md. App. 624, 639, 761 A.2d 76, 84 (2000) (citation omitted), *cert. denied*, 362 Md. 625, 766 A.2d 148 (2001). "'[W]ithout such records, the reasonableness, *vel non*, of the fees can be determined only by conjecture or opinion of the attorney seeking the fees and would therefore not be supported by competent evidence.'" *Id.* at 639, 761 A.2d at 85 (citation omitted).

Maryland courts ordinarily utilize the "lodestar" approach when determining attorney's fees under fee-shifting statutes. *Friolo v. Frankel*, 373 Md. 501, 504–05, 819 A.2d 354, 356 (2003). However, the Maryland Court of Appeals has held that the lodestar approach is "an inappropriate mechanism for calculating fee awards" under contractual fee-shifting provisions in "disputes between private parties over breaches of contract." *Monmouth Meadows*, 416 Md. at 336, 7 A.3d at 7. This is because a "contractual fee-shifting provision is designed by the parties, not by the legislature. . . . Thus, it usually serves no larger public purpose than the interests of the parties." *Congressional Hotel Corp. v. Mervis Diamond Corp.*, 200 Md. App. 489, 505, 28 A.3d 75, 84 (2011). Rather than using the lodestar approach, a court "should use the factors set forth in Rule 1.5 [of the Maryland Rules of Professional Conduct ("MRPC")[3]] as the foundation for analysis of what constitutes a reasonable fee when the court awards fees based on a contract

---

[3] MRPC 1.5(a) is a standard of professional ethics, generally applicable to all attorney-client relationships, which mandates that an attorney "shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses."

entered by the parties authorizing an award of fees." *Monmouth Meadows*, 416 Md. at 336–37, 7 A.3d at 8.[4]

MRPC 1.5(a) enumerates eight non-exclusive "factors to be considered in determining the reasonableness of a fee":

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

"In order to apply Rule 1.5 to a fee award, a court does not need to evaluate each factor separately." *SunTrust*, 201 Md. App. at 402, 29 A.3d at 730; *see Monmouth Meadows*, 416 Md. at 337 n.11, 7 A.3d at 8 n.11.[5] Moreover, when conducting an MRPC 1.5 analysis, a court "should consider the amount of the fee award in relation to the principal amount in litigation, and this may result in a downward adjustment. Although fee awards may approach or even exceed the amount at issue, the relative size of the award is something to be evaluated." *Monmouth*

---

[4] Cases decided under the lodestar approach can "provide helpful guidance" in contractual fee-shifting cases, *Congressional Hotel*, 200 Md. App. at 505, 28 A.3d at 85, because "there is likely to be some overlap between the Rule 1.5 factors and the mitigating factors typically considered in a lodestar analysis." *Monmouth Meadows*, 416 Md. at 337, 7 A.3d at 8. A list of factors similar to the list in MRPC 1.5 was enunciated, for use in a lodestar analysis, in the seminal case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and the so-called "*Johnson* factors" have been adopted for use in lodestar cases by the Fourth Circuit, *see Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978), and in Maryland. *See Friolo*, 373 Md. at 522 n.2, 819 A.2d at 366 n.2.

[5] Indeed, a court need not "make explicit findings with respect to Rule 1.5" at all, or even "mention Rule 1.5 as long as it utilizes the rule as its guiding principle in determining reasonableness." *Monmouth Meadows*, 416 Md. at 340 n.13, 7 A.3d at 10 n.13.

*Meadows*, 416 Md. at 337, 7 A.3d at 8. And, a "trial court also may consider, in its discretion, any other factor reasonably related to a fair award of attorney's fees." *Id.* at 337–38, 7 A.3d at 8.

Plaintiffs have requested $281,252 in attorney's fees for five lawyers, as well as $1,437 in costs. The fee requests reflect an aggregate of 505.6 hours expended at a blended hourly rate of $556.27. Plaintiffs submitted three exhibits in support of their motion. The first exhibit (Ex. A, ECF 46-2) consists of "time entry records with detailed descriptions of the services performed by each attorney." Memo at 5. The second exhibit (Ex. B, ECF 46-3) consists of the same records, separated by litigation phase, as required by the Local Rules. The third exhibit (Ex. C, ECF 46-4) itemizes the $1,437 in costs accrued by counsel.[6]

Exhibits A and B reflect that four attorneys with the firm Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") were primarily responsible for the work performed on the cases for plaintiffs. The four attorneys are Dania Slim, an associate at Pillsbury admitted to the bar in 2008, whose hourly rate was $435 in 2011, $490 in 2012, and $545 in 2013; Jerry L. Hall, of counsel at Pillsbury and admitted to the bar in 1997, whose hourly rate was $565 in 2011, $590 in 2012, and $610 in 2013; Miles S. Mason, a partner at Pillsbury admitted to the bar in 1987, whose hourly rate was $595 in 2011, $620 in 2012, and $645 in 2013; and Patrick J. Potter, a partner at Pillsbury admitted to the bar in 1989, whose hourly rate was $720 in 2011, $750 in 2012, and $780 in 2013. Memo at 6. Plaintiffs' billing records reveal that Slim billed for 222.6 hours of work; Hall billed for 204.2 hours of work; Mason billed for 40.5 hours of work; and Potter billed for 32.3 hours of work. Smaller amounts of work were performed by Stephen S.

---

[6] Defendant does not challenge the award of $1,437 in costs.

Asay, Esq. (6.4 hours), who was admitted to the bar in 2012 and whose hourly rate was approximately $360.[7]

Defendant advances several arguments in support of his request to reduce the amount of legal fees awarded to plaintiffs. His arguments primarily rely on the first and third factors enumerated in MRPC 1.5(a). First, he notes that his own attorney's fees were less than a third of those of defendants, and he claims that this discrepancy suggests that plaintiffs' requested fees are excessive. Opp. at 2. Second, defendant avers that plaintiffs' requested fees are excessive because the cases did not involve "significant factual disputes," were inactive for large periods of time, and the briefs in the two cases concerned overlapping and similar legal issues. *Id*. at 4. Third, defendant claims that plaintiffs' counsel should not be able to recover for time spent preparing a motion for default judgment because the motion was "unreasonable." *Id.* Fourth, defendant claims that plaintiffs seek to recover attorney's fees related to Nassau's bankruptcy case, which is "separate and apart from the Guaranty issue." *Id*. Fifth, defendant argues that plaintiffs have not complied with the Local Rules' direction that, as a general matter, only one lawyer is to be compensated for intraoffice conferences. *See* Appendix B to Local Rules. Sixth, defendant claims that the rates for plaintiffs' counsel "do not comport with the Local Guideline and are well in excess of those amounts deemed to be reasonable by this Court." Opp. at 6.

1. Fee Customarily Charged in the Locality for Similar Legal Services

Defendant observes that plaintiffs' attorneys' billings exceed the maximum hourly rates set forth in the Guidelines. Therefore, he urges the Court to limit plaintiffs' fee recovery. Under MRPC 1.5(a)(3), a court reviewing an attorney's fee request must consider "the fee customarily charged in the locality for similar legal services." In this inquiry, the Fourth Circuit follows the

---

[7] Plaintiffs did not initially provide the Court with each attorney's number of years of experience. Therefore, on March 21, 2014, counsel was directed to provide that information (ECF 49), and they complied on March 25, 2014 (ECF 50).

"locality rule," whereby "'[t]he community in which the court sits is the first place to look to in evaluating the prevailing market rate.'" *Montcalm Pub. Corp. v. Commonwealth of Va.*, 199 F.3d 168, 173 (4th Cir. 1999) (citation omitted). "Evidence of the prevailing market rate usually takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate. However, in the absence of sufficient documentation, the court may rely on its own knowledge of the market." *CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000).

"In the District of Maryland, this market knowledge is embedded in the Guidelines." *Gonzales v. Caron*, Civ. No. CBD-10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011). "The Guidelines set forth advisory fee ranges for attorneys based on years of experience. The rates "are intended solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees," and "may serve to make the fee petition less onerous by narrowing the debate over the range of a reasonable hourly rate in many cases." Guidelines § 3 n.6. However, the fee ranges are not binding on the Court. *Id.*; *see also Thomas v. Smith, Dean & Assocs., Inc.*, Civ. No. ELH-10-3441, 2011 WL 3567043, at *2 (D. Md. Aug. 10, 2011) (stating that the Guidelines rates "are neither binding nor definitive ").

Although "the Guidelines are not binding, generally this Court presumes that a rate is reasonable if it falls within these ranges." *Gonzales*, 2011 WL 3886979, at *2. The hourly rates in the Guidelines are as follows:

  a. Lawyers admitted to the bar for less than five (5) years: $150-190.
  b. Lawyers admitted to the bar for five (5) to eight (8) years: $165-250.
  c. Lawyers admitted to the bar for nine (9) to fourteen (14) years: $225-300.
  d. Lawyers admitted to the bar for fifteen (15) years or more: $275-400.
  e. Paralegals and law clerks: $95-115.

The hourly rates for plaintiffs' attorneys greatly exceed the maximum permitted by the Guidelines.[8] Ms. Slim's average hourly rate of $490 exceeds by $300 per hour the maximum for lawyers admitted to the bar for less than five years; Mr. Hall's average hourly rate of $588.33 exceeds by $188 per hour the maximum for lawyers admitted to the bar for fifteen years or more; Mr. Mason's average hourly rate of $620 exceeds the maximum for lawyers admitted to the bar for fifteen years or more by $220 per hour; Mr. Potter's average hourly rate of $750 exceeds the maximum for lawyers admitted to the bar for fifteen years or more by $350 per hour.

In light of the vast discrepancies in hourly rates, described above, I will reduce the fee awards such that each attorney is compensated for his or her work at the highest level of the applicable guidelines range. Accordingly, fees for work by Slim (222.6 hours) and Asay (6.4 hours) will be allowed at $190 per hour; fees for work by Hall (204.2 hours), Mason (40.1 hours), and Potter (32.3 hours) will be allowed at $400 per hour. This calculation yields a total amount of recoverable fees of $154,150.

2. Time and Labor Required

The rest of defendant's contentions fall under the umbrella of the "time and labor required." MRPC 1.5(a)(1). His first argument is that plaintiffs' requested fees are excessive because they are more than three times the amount of fees charged by defendant's counsel. However, defendant offers no authority for the proposition that the reasonableness *vel non* of a fee request is determined by comparison to the opposing party's fees. And, I am not aware of any such authority. Accordingly, I will not reduce the fee request on those grounds.

However, I do find excessive the amounts billed by plaintiffs' counsel in connection with a motion for partial summary judgment and memorandum in support thereof filed on March 8,

---

[8] As noted, each attorney's hourly rate increased each year; in this section, I use the average hourly rate for each attorney.

2013 (ECF 37 & ECF 37-1 in 11-cv-2964). Plaintiffs' counsel charged for 29.1 hours of work; at the reduced rates detailed *supra*, the total amount billed for work on the Motion was $10,758. *See* Motion Ex. A at 25–27. The motion was less than one page long and the accompanying memorandum was similarly brief—it was five pages long and contained only one page of legal argument.

Accordingly, I will only award legal fees for 10 hours of work on the motion, and will thus reduce the fee award by $7,088.09. The 19.1 hours I have disallowed constitute 65.64% of the hours billed by plaintiffs' counsel for the motion, and 65.64% of $10,758 is $7,088.09.

I reject defendant's argument that the time plaintiffs spent preparing a motion for default judgment in 11-cv-2964 should be excluded as "unreasonable." In my view, the motion for default judgment was appropriate and reasonable. Suit was filed on October 17, 2011. Under Rule 12 of the Federal Rules of Civil Procedure, a defendant must serve an answer within twenty-one days after being served with a summons and complaint. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). When plaintiffs filed their motion for default judgment on December 2, 2011, defendant's answer (or other response) was overdue by approximately eleven days. Thus, the motion for default judgment was procedurally warranted. Although I ultimately denied the motion after Mercatanti "asserted legitimate and reasonable explanations for his failure to timely respond," ECF 14, the motion was not unreasonable. Accordingly, plaintiffs are entitled to attorney's fees for their work on the motion.

Defendant next claims that plaintiffs improperly seek to recover attorney's fees for 100.5 hours of work related to Nassau's bankruptcy case, which "are not costs incurred in this case and therefore should not be awarded." Opp. at 4. In support, Mercatanti submitted an annotated copy of plaintiffs' fee request, marking the particular line items he believes relate only to the bankruptcy case. *See* ECF 47-3. Although Mercatanti asserts that 100.5 hours of billed work

related to the bankruptcy case, he has only marked line items amounting to 82.8 hours of work. In order to evaluate this claim, a brief recounting of the procedural history of 12-cv-00195 is warranted.

Before Manning Co. filed its suit against Mercatanti, creditors of Nassau filed involuntary petitions for relief against Nassau and its affiliates in the U.S. Bankruptcy Court for the District of Delaware. *See In re Nassau Broadcasting Partners, et al.*, Case No. 11-12934 (KG) ("Bankruptcy Case"). As a result, in order to enforce the guaranty against Mercatanti, Manning Co. needed to obtain relief from the automatic stay issued by the Bankruptcy Court. Accordingly, on October 13, 2011, Manning Co. filed a motion for relief from the automatic stay in the Bankruptcy Case ("Motion for Relief," ECF 83 in Bankruptcy Case). Manning Co. filed a Reply brief on November 9, 2011 (ECF 139 in Bankruptcy Case), and the motion was granted on November 10, 2011. *See* ECF 145 in Bankruptcy Case. Later, pursuant to court-approved auction procedures, Nassau conducted an auction of its radio stations. Manning Co. was selected by Nassau as having made the highest and best bid at $6.4 million in cash.

In their Reply, plaintiffs point out that they "are <u>not</u> seeking reimbursement for costs related to the purchase of the radio stations." Reply at 5 (emphasis in original). Rather, according to plaintiffs, they seek reimbursement solely for the "costs incurred in collecting on the principal obligation," which includes the costs of "seeking relief from the automatic stay." *Id.* at 6. And, the Note (the obligations of which Mercatanti agreed to satisfy) requires Nassau to pay "attorney's fees, incurred . . . in collection of or enforcing payment of this Note in accordance with its terms." Opp. at 6.

My review of the line items related to the Bankruptcy Case confirm that most of the entries related to the Bankruptcy Case were for work on the Motion for Relief. However, a few line items appear unrelated to Manning Co.'s efforts to collect on the Note. In particular, eight

line items, totaling 17.7 hours, for work conducted between November 11, 2011 and November 18, 2011 (*i.e.* after the Bankruptcy Court granted the Motion for Relief), do not appear to be for compensable work. Therefore, I will not award attorney's fees for those items. The 17.7 hours break down as follows: Slim – 9.9 hours at $190/hour ; Mason – 1.9 hours at $400/hour; Hall – 5.9 hours at $400/hour. The total amount is $5,001. Accordingly, I will reduce the fee award by $5,001.

Next, defendant argues that plaintiffs have not complied with the Local Rules' direction that, as a general matter, only one lawyer is to be compensated for intraoffice conferences. Appendix B to the Local Rules states:

> Generally, only one lawyer is to be compensated for client, third party and intraoffice conferences, although if only one lawyer is being compensated the time may be charged at the rate of the more senior lawyer. Compensation may be paid for the attendance of more than one lawyer where justified for specific purposes such as periodic conferences of defined duration held for the purpose of work organization, strategy, and delegation of tasks in cases where such conferences are reasonably necessary for the proper management of the litigation.

Defendant claims that plaintiffs' submissions include "138 entries referencing discussions or conferences . . . among Pillsbury attorneys for a total of 243.6 hours.[9] In this matter, plaintiffs have not demonstrated any special circumstances that would warrant such extensive time conference internally among attorneys." Opp. at 5. In response, plaintiffs argue that the alleged duplicate time entries fit within the Guidelines' allowance of compensation for more than one lawyer for "'periodic conferences of defined duration held for the purpose of work organization, strategy, and delegation of tasks . . . .'" Reply at 6 (quoting Appendix B to Local Rules).

---

[9] Defendant has annotated plaintiffs' fee request, marking the particular line items he believes are duplicative entries for intraoffice conferences.

Although the number of duplicative entries for intraoffice conferences is not nearly as extreme as defendant suggests,[10] I agree with defendant that plaintiffs' billing includes some duplicative entries for intraoffice conferences. Accordingly, for this reason, I will disallow 11.4 hours of billed time.[11] Because the Local Rules state that intraoffice conferences may be billed at the rate of the most senior attorney, I will reduce the award by 11.4 hours at the rate for Ms. Slim ($190), who was the junior attorney on most of the intraoffice conferences. This amounts to a reduction of $2,166.

In sum, under MRPC 1.5(a)(1), I will disallow 48.2 hours of work billed by plaintiffs' attorneys, for a total reduction of $14,255.09.

**Conclusion**

Plaintiffs have requested $281,252 in attorney's fees, reflecting 505.6 hours of work. For the reasons stated, I will reduce the attorneys' hourly rates to bring them into compliance with the Guidelines, and I will disallow 48.2 hours of work. As a result, I will award $139,894.91 in fees to plaintiffs. I will also award $1,437 in costs, for a total of $141,331.91. A separate Order follows, implementing this ruling.

Date: April 10, 2014                         /s/
                                             Ellen Lipton Hollander
                                             United States District Judge

---

[10] There are several occasions in the billing in which a multiple attorney conference occurred but, appropriately, only one attorney billed for it.

[11] Many of the duplicative intraoffice conferences are billed as one element of a larger billing entry, making it difficult to determine the exact amount of the duplicative entry. This number represents the Court's best estimate of the duplicative charges.